**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **ANA YEIMI MARTINEZ GARCIA**, | Case No. _____ |
| Plaintiff, | Hon. _____ |
| v. | JURY TRIAL DEMANDED |
| **MENESES ENTERPRISES, LLC**;<br>**MENESES LAW, PLLC**, a Texas<br>Professional Limited Liability Company;<br>**FRANCES CHRISTINE MENESES**,<br>an individual; **JULIO CARLOS MENESES**,<br>an individual; **RACHEL VICTORIA**<br>**ROBERTSON**, an individual; and<br>**DIANA ALFONSO**, an individual, | |
| Defendants. | |

## <u>PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND</u>

Plaintiff Ana Yeimi Martinez Garcia brings this civil action against Defendants Meneses Law, PLLC, Frances Christine Meneses, Julio Carlos Meneses, Rachel Victoria Robertson, and Diana Alfonso arising from the operation of an ongoing, highly structured enterprise that systematically targets vulnerable immigrant clients and steers them into fraudulent Violence Against Women Act ("VAWA") self-petitions they neither sought nor qualified for.

This enterprise operates through a coordinated network of attorneys and non-attorney staff using standardized, high-volume processes to manufacture abuse narratives, obtain client signatures without informed consent, and submit immigration filings to U.S. Citizenship and Immigration Services ("USCIS") under penalty of perjury.

Plaintiff sought lawful family-based immigration relief through her United States citizen husband. Defendants instead diverted her into a VAWA-based filing supported by false and

unauthorized allegations of abuse, collected substantial legal fees, and then refused to release her client file when she attempted to investigate the submission.

Plaintiff is one of hundreds if not thousands of victims of a repeatable and scalable system designed not to evaluate eligibility, but to produce filings that appear to satisfy VAWA criteria regardless of the underlying facts. This enterprise did not depend on the truth of client experiences, but on the consistent construction of narratives sufficient to support immigration filings and generate revenue.

## I.    Nature of the Action

1.    This case arises from an immigration-law fraud and malpractice scheme. Defendants steered Plaintiff away from the lawful family-based immigration process she sought through her United States citizen husband and instead placed her into a VAWA self-petition based on false, exaggerated, and unauthorized allegations of abuse.

2.    Plaintiff has resided in the United States for almost a decade, and is married to a U.S. citizen with two children. Plaintiff met her soon-to-be husband in 2017 through family, and they developed a friendship that eventually turned into a relationship in 2019 after Plaintiff's husband stepped up to help her care for her first child. Plaintiff and her husband welcomed a daughter in 2020 and got married in 2024.

3.    Plaintiff worked hard to build a healthy and stable life for herself and her family, and as a part of that endeavor, sought out legal counsel in order to remedy her immigration status. Plaintiff's search led her to Defendants, who she believed were knowledgeable professionals that could guide her through the complicated process of adjusting her legal status through her husband. Plaintiff trusted Defendants to help her so that she could be a

responsible wife and parent to her two children, and give them a stable home environment free from the uncertainty surrounding her status.

4.  Defendants accepted Plaintiff as a client, charged her a $14,550.00 flat fee, caused attorney Frances Christine Meneses to appear as attorney of record, and then delegated critical legal work to non-lawyer or inadequately supervised staff. When Plaintiff told Defendants that she wanted to file a family petition, Defendants dissuaded her and instead recommended that she file a VAWA. Defendants portrayed the VAWA application as a better, faster alternative where Plaintiff would not have to depart the country as she would with the consular processing that is a part of the I-130 petition. Plaintiff did not know what a VAWA application was, but Defendants told her that all they would need is a statement from her about her relationship with her husband. The staff then prepared and submitted immigration filings Plaintiff did not knowingly authorize.

5.  Defendants' filing package included a Form I-360 and a sworn declaration attributed to Plaintiff that falsely portrayed her husband as having subjected her to severe psychological, emotional, verbal, physical, sexual, and financial abuse.

6.  Plaintiff later discovered that the declaration contained statements she did not make, did not approve, did not understand, and did not believe were true. Plaintiff was stunned that Defendants had taken one or two statements and wildly mischaracterized them in the declaration, along with gross exaggerations about the state of her relationship and completely fabricated allegations of transgressions like sexual abuse. When she sought her client file, Defendants refused to release it.

7.  Plaintiff is now exposed to denial of immigration benefits, fraud findings under 8 U.S.C. § 1182(a)(6)(C)(i), and, depending on agency enforcement decisions, potential referral

for further immigration-enforcement action. She also faces the loss of fees paid, payment obligations claimed against her, and the cost of successor counsel and remediation.

8.  Plaintiff's experience is not isolated. Defendants have processed hundreds if not thousands similar VAWA self-petitions for other clients using the same pipeline, scripts, and concealment tactics.

9.  Multiple simultaneous bar grievances have been filed against Defendant Meneses alleging materially identical misconduct.

10. This case asserts Texas claims for legal malpractice, breach of fiduciary duty, fraud, fraudulent inducement, fraudulent nondisclosure, negligent misrepresentation, negligence, gross negligence, breach of contract, money had and received / unjust enrichment, violations of the Texas Theft Liability Act, civil conspiracy, knowing participation in breach of fiduciary duty, negligent supervision, and violations of the Texas Deceptive Trade Practices–Consumer Protection Act, together with federal civil RICO claims under 18 U.S.C. §§ 1962(c), 1962(d), and 1964(c).

11. Plaintiff seeks actual damages, fee disgorgement, fee forfeiture, statutory damages under the Texas Theft Liability Act, treble damages under civil RICO, exemplary damages where permitted by Texas law, attorney's fees, costs, interest, and equitable relief, including an order requiring Defendants to produce Plaintiff's complete client file.

## II.    Jurisdiction and Venue

12. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968.

13. This Court also has diversity jurisdiction under 28 U.S.C. § 1332(a). The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, as Plaintiff seeks actual damages exceeding the amounts already paid and obligated under the representation agreement, treble RICO damages, statutory damages, fee forfeiture, exemplary damages, and attorney's fees.

14. Plaintiff is a natural person who is a citizen of Mexico and domiciled in Virginia for purposes of 28 U.S.C. § 1332.

15. Defendant Frances Christine Meneses is a natural person domiciled in Texas and is therefore a citizen of Texas.

16. Defendant Julio Carlos Meneses is a natural person domiciled in Texas and is therefore a citizen of Texas.

17. Defendant Rachel Victoria Robertson is a natural person domiciled in Texas and is therefore a citizen of Texas.

18. Defendant Diana Alfonso is a natural person domiciled in Texas and is therefore a citizen of Texas.

19. Defendant Meneses Enterprises, LLC, is a Texas limited liability company. Defendant Meneses Law, PLLC is a Texas professional limited liability company. The citizenship of a limited liability company is determined by the citizenship of each of its members. On information and belief, the sole member of Meneses Law, PLLC is Frances Christine Meneses, a citizen of Texas. To the extent Meneses Law, PLLC has additional members, Plaintiff alleges on information and belief that all such members are citizens of Texas. Meneses Law, PLLC is therefore a citizen of Texas. Plaintiff will amend or supplement

this allegation as the identities and citizenships of all members are confirmed in discovery.

20. Complete diversity therefore exists between Plaintiff and all Defendants.

21. Venue is proper in this District under 28 U.S.C. § 1391(b). Defendants reside in this District; Defendants conduct their business in this District; Defendants accepted Plaintiff as a client through communications received in this District; Defendants prepared and submitted Plaintiff's immigration filings from this District; and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

22. This Court has personal jurisdiction over each Defendant. Each individual Defendant is a Texas resident, practiced law or worked from offices in Texas, and committed the acts complained of in Texas. Defendant Meneses Law, PLLC is a Texas entity that maintains its principal office in Texas, conducts its practice in Texas, contracted with Plaintiff in Texas, performed legal services in Texas, submitted immigration documents from Texas, and caused injury to Plaintiff in Texas.

### III.   Parties

23. Plaintiff Ana Yeimi Martinez Garcia is a natural person residing and domiciled in the Commonwealth of Virginia.

24. Defendant Meneses Enterprises, LLC is a Texas limited liability company formed on or about November 14, 2023. Its principal address is 2900 North Loop West, Suite 300, Houston, Texas 77092—the same address as Meneses Law, PLLC. Its taxpayer identification number is 32092495103. Its managers are Julio Meneses and Frances C. Meneses. Upon information and belief, Meneses Enterprises, LLC is an alter ego or instrumentality of Meneses Law, PLLC and/or Frances Christine Meneses, or is

otherwise used in connection with the operations, revenue, or financial activities of the enterprise described in this Complaint. Despite sharing the law firm's address and management, Meneses Enterprises, LLC has no apparent connection to the provision of legal services. Its formation during the period of the alleged fraudulent conduct, combined with its shared address, overlapping management, and lack of any visible independent business purpose, raises a reasonable inference that it serves as a vehicle to receive, hold, or conceal revenue derived from the scheme alleged herein.

25. Defendant Meneses Law, PLLC is a Texas professional limited liability company that holds itself out as an immigration law firm. Its registered address is 4800 W 34th St. Ste A15 Houston, Texas 77092. Its Tax ID is 32076164469.

26. Defendant Frances Christine Meneses is an attorney licensed in Texas. She is the owner, sole or principal member, manager, supervising attorney, and controlling person of Meneses Law, PLLC, and is listed as the sole manager on the Texas Secretary of State portal, Tax ID 32076164469. Defendant Meneses signed Plaintiff's representation agreement and Form G-28 and appeared as attorney of record in Plaintiff's immigration matter.

27. Defendant Julio Carlos Meneses is the Vice President of Meneses Law, PLLC and is directly involved in the day to day operations of the firm including decision making that affects the manner in which the firm operates, management of the firm's personnel and overseeing the process which led to the harm caused to Plaintiff.

28. Defendant Rachel Victoria Robertson is an attorney licensed in Texas. She is identified in the USCIS filing package as the preparer of Plaintiff's Form I-360. She listed Meneses

Law, PLLC as her business or organization and signed the preparer's certification dated May 12, 2025 under penalty of perjury.

29. Defendant Diana Alfonso is, on information and belief, a non-attorney employee, agent, or contractor of Meneses Law, PLLC who participated in the intake, translation, and execution of Plaintiff's immigration documents and the documents of other clients similarly funneled into VAWA self-petitions by Defendants.

30. At all relevant times, each Defendant acted individually and as an agent, employee, servant, representative, manager, officer, partner, member, co-conspirator, alter ego, joint venturer, or participant with the other Defendants.

31. At all relevant times, Defendants acted within the course and scope of their employment, agency, representation, or participation in the enterprise described below. Meneses Law, PLLC is liable for the acts and omissions of its members, employees, and agents under principles of respondeat superior, vicarious liability, ratification, and authorized agency.

32. Defendants Frances Christine and Julio Carlos Meneses are the primary RICO defendants responsible for directing and operating the enterprise.

33. Defendants Robertson and Alfonso are included based on their knowing participation in specific predicate acts and the RICO conspiracy.

### IV. Statutory and Regulatory Framework

#### A. The VAWA self-petition process.

34. The Violence Against Women Act ("VAWA") is a federal statutory framework that permits certain noncitizens to self-petition for lawful immigration status without the participation or knowledge of a qualifying United States citizen or lawful permanent resident spouse or parent.

35. VAWA permits individuals who have been battered or subjected to extreme cruelty by a qualifying relative to "self-petition" for immigrant classification, including lawful permanent residency. A qualifying relative is a U.S. citizen or lawful permanent resident spouse or former spouse, a U.S. citizen child 21 years or older, or a U.S. citizen parent or former parent.

36. Unlike traditional family-based immigration petitions, a VAWA self-petition does not permit the alleged abuser to participate in the process. It is adjudicated based largely on documentary submissions prepared and provided by the petitioner and her counsel.

37. The evidentiary standard applicable to VAWA petitions permits adjudicators to consider "any credible evidence," including sworn declarations, affidavits, and narrative statements prepared on behalf of the petitioner.

38. As a result, the petitioner's personal declaration, often drafted with the assistance of counsel, serves as a central and frequently dispositive component of the application.

39. Depending on the applicant's individual case, a VAWA self-petitioner in the United States may seek employment authorization ( aka work permit) through a pending adjustment of status application or, after approval of the VAWA self-petition, under the employment-authorization category applicable to approved VAWA self-petitioners.

40. The acquisition of a work permit stands as the most significant and immediate advantage of submitting a VAWA application, a fact that Defendants emphasize extensively throughout their marketing efforts..

41. Additional immigration benefits, including deferred action and eligibility to adjust status to lawful permanent residence, may follow approval of the VAWA petition.

   **B.      *Susceptibility to abuse and federal consequences of false filings.*

42.     The structure of the VAWA process (particularly its reliance on written declarations, the absence of an adversarial party, and the availability of immediate and interim benefits) makes it uniquely vulnerable to abuse when exploited by unscrupulous actors.

43.     The process can be manipulated where individuals or entities fabricate, exaggerate, or otherwise misrepresent allegations of abuse to create the appearance of eligibility for immigration benefits.

44.     The federal government has long recognized fraud in immigration filings, including in VAWA self-petitions, as a serious enforcement concern. USCIS's Fraud Detection and National Security Directorate exists in part to identify and refer such fraud, and federal authorities have warned the public against "notario fraud" and high-volume immigration filing operations that mass-produce inaccurate or frivolous filings.

45.     In December of 2025, the federal government issued a policy update in order to combat fraud given the alarming increase in VAWA self petitions which had grown by 360% between 2020 and 2024.[1]

46.     A petitioner whose VAWA self-petition contains material misrepresentations may be subject to severe consequences under federal immigration law, including findings of fraud or willful misrepresentation under 8 U.S.C. § 1182(a)(6)(C)(i), which can result in permanent inadmissibility and denial of immigration benefits.

47.     A false filing can also expose an applicant to denial, fraud or misrepresentation findings, and, depending on agency enforcement decisions, referral for further enforcement action such deportation proceedings and even federal criminal charges.

---

[1]                                                                                         See https://www.uscis.gov/newsroom/alerts/uscis-restores-integrity-to-the-vawa-domestic-abuse-program-after-finding-rampant-fraud - last visited April 30, 2026.

48.     Knowingly false statements made under penalty of perjury in immigration filings, and the fraudulent preparation and submission of immigration documents, may also constitute violations of 18 U.S.C. § 1546 (fraud and misuse of visas, permits, and other immigration documents). Defendants' unauthorized signature practices furthered the alleged mail- and wire-fraud scheme.

49.     Immigration judges have relied on false or inconsistent allegations made in USCIS filings to make adverse credibility findings against applicants in subsequent removal proceedings, further compounding the harm caused by fraudulent or inaccurate submissions.

50.     The integrity of the VAWA process depends on truthful submissions, competent legal and ethical guidance, and informed client participation. When licensed attorneys submit applications with invented, untrue, or exaggerated information, the system is compromised, and the intent of Congress in enacting VAWA is subverted.

51.     VAWA was designed to protect legitimate victims of domestic abuse and extreme cruelty subject to an imbalance of power and control based on family relation and vulnerability. It was not designed to be a substitute pathway for noncitizens who otherwise qualify for family-based immigration but have not been subjected to battery or extreme cruelty.

### V.     Factual Allegations

### A.     *Defendants operate a high-volume VAWA filing mill exploiting the structure of the VAWA process.*

52.     Defendants Meneses designed and operated their law practice to capitalize on the structural vulnerabilities of the VAWA process described above.

53.    Rather than providing individualized legal advice and client-centered representation, Defendants implemented a high-volume, standardized system designed to generate immigration filings efficiently and profitably, with minimal attorney involvement and limited client understanding.

54.    The system was not dependent on the truth of client experiences. It depended on the consistent production of narratives sufficient to satisfy the perceived requirements of a VAWA petition.

55.    Defendants' business model prioritized client acquisition, rapid case processing, and fee generation over factual accuracy, legal and ethical compliance, and informed consent.

56.    Clients were steered into VAWA filings regardless of eligibility, and declarations were created to fit the legal framework rather than reflect actual events.

57.    Defendants operationalized this model through a multi-departmental pipeline that isolated responsibilities, restricted communication between departments, and prevented meaningful verification of the information submitted to federal authorities.

B.    ***Defendants' marketing and sales apparatus concealed the VAWA theory from prospective clients.***

58.    Defendants' operation began with a marketing and sales apparatus targeting Spanish-speaking immigrants. Non-lawyer personnel were presented as "licenciadas," a term commonly understood in Latin American countries to mean attorneys.

59.    These "licenciadas" are sales representatives. They are paid a combination of an hourly rate and a commission based on the number of clients they convince to retain the firm.

60.     Sales representatives were subject to performance quotas tied to client retention, and failure to meet those quotas resulted in disciplinary consequences, including termination. These incentives reinforced a system focused on volume rather than accuracy.

61.     Sales personnel used scripted messaging promising work permits within months, social security numbers, and lawful status without disclosing that such benefits would be pursued through a VAWA petition requiring allegations of abuse.

62.     Sales personnel were specifically prohibited from using the term "VAWA" in their initial contact with clients.

63.     The reason for this prohibition was to ensure that clients were not made aware that the application being suggested was a VAWA self-petition, especially because that term was well known in the immigrant community and could be easily researched online.

64.     Defendants' marketing department produced more than 1,300 videos across various platforms. An analysis of this promotional content reveals the following patterns:

```
### 1. THE GLOBAL FRAUD PATTERN ACROSS ALL 1,355 VIDEOS

The analysis reveals a two-pronged, pervasive, and interconnected global fraud pattern:

**A. Universal Promise of "Arreglar Sin Salir" (Adjust Status Without Leaving the U.S.) for Ineligible Populations:**
A dominant theme across nearly all transcripts is the explicit and unqualified promise that individuals can "arreglar" (regularize their
immigration status) "desde aquí sin salir" (from here without leaving) the United States. This promise is extended even to those who:
*    **Entered Illegally (EWI):** Repeatedly, the firm assures individuals who "entró ilegalmente" or "aún sin legalmente" that they can adjust
status without leaving, often leveraging U.S. citizen spouses or adult children (over 21). This directly contravenes general immigration law,
which typically requires lawful entry for Adjustment of Status (AOS) or, for EWI individuals, specific and limited pathways (e.g., INA 245(i),
parole-in-place) that are not universally applicable and require strict criteria.
*    **Face the 10-Year Bar:** Numerous client testimonials highlight that "other lawyers" correctly informed them about the 10-year bar for
unlawful presence upon leaving the U.S., only for Meneses Law to promise a method to "arreglar sin salir" and avoid this severe consequence. The
firm explicitly states that the 10-year bar "no les cae a una persona hasta que salga del país," implying that processing "adentro" bypasses
this fundamental statutory consequence for most EWI individuals requiring consular processing.
*    **Have Prior Deportations:** The firm even suggests that those with previous deportations can "arreglar aquí adentro y poder deshacer esa
deportación" if married to a U.S. citizen, simplifying a highly complex and often difficult legal challenge.
*    **Implying Unique & Easy Solutions:** The firm consistently positions itself as possessing unique solutions where other lawyers have failed,
offering quick timelines (e.g., 6-12 months for work permits, 2-3.5 years for residency) that may be unrealistic for complex cases.

**B. Systematic Concealment and Misrepresentation of VAWA/Abuse Requirements:**
While VAWA (Violence Against Women Act) is frequently mentioned (often as "ley del vago" or "ley de la 360"), its fundamental requirement of
**abuse or extreme cruelty** by a U.S. citizen or LPR spouse, parent, or adult child is almost universally omitted or significantly diluted.
Instead, VAWA is presented as:
*    **A Generic Solution for Uncooperative Family Members:** The firm markets VAWA as a pathway for those whose U.S. citizen or LPR spouse/child
"no te quiere ayudar," "no te quiere firmar," "está aguantando," or is simply "tóxico." This redefines VAWA from a protection for abuse victims
to a general workaround for relationship problems or lack of cooperation.
*    **A "Confidential" Loophole:** Emphasis is placed on the confidentiality of the process, specifically "sin requerir la firma de su pareja"
and "sin que su pareja se dé cuenta," without clearly explaining that these features are intended for victims seeking safety from their abusers,
not for individuals in non-abusive, uncooperative relationships.
*    **"Stress" or "Indifference" as Qualifying Abuse:** The requirement of abuse is replaced with vague terms such as "estreses"
(stress/difficulties), "indiferencias" (indifference/disagreements), "momentos Rebeldes" (rebellious moments) from adult children, or general
"problemas matrimoniales." This fundamentally misrepresents VAWA's legal basis, encouraging individuals to falsely claim eligibility based on
common familial discord.
*    **Minimization of Risks:** The firm downplays the consequences of a denied VAWA case, stating it "no les afecta en ninguna forma,
simplemente llega una negación y tiene que empezar de nuevo," which minimizes the severe implications of a fraudulent or unsubstantiated claim
(e.g., findings of misrepresentation, future immigration bars, deportation).
*    **Marketing VAWA as a Bypass for Illegal Entry:** The firm links the misrepresented VAWA process with the "arreglar sin salir" promise,
offering it as a mechanism for individuals who entered illegally to bypass the 10-year bar based on "estreses" with family members.

This combined pattern demonstrates a deliberate strategy to attract clients under false pretenses, potentially leading them to pursue
applications for which they are ineligible, waste significant funds, and face severe negative immigration consequences.
```

```
### 2. SPECIFIC EVIDENCE OF 'CONCEALMENT OF VAWA'

The concealment and misrepresentation of VAWA's core requirements are a critical component of the observed fraud pattern. Here's how it's
specifically evidenced:

*   **Substitution of "Abuse" with Vague Terms:** The statutory requirement of battery or extreme cruelty is routinely replaced with euphemisms
and general familial or marital issues. Examples include:
    *   "estreses" (stress) with spouses or adult children (e.g., "estreses con los hijos mayores de 21 años," "estreses o en el matrimonio").
    *   "indiferencias" (indifference/disagreements) with children (e.g., "indiferencias aún con los hijos").
    *   "momentos Rebeldes" (rebellious moments) or a child "no le quiere escuchar" (doesn't want to listen).
    *   "problemas matrimoniales" (marital problems) or "tensiones en pareja."
    *   A spouse or partner described as "tóxico."

*   **Framing VAWA as a Solution for "Uncooperative" Relatives:** Instead of highlighting abuse, the firm emphasizes that VAWA is for situations
where a U.S. citizen or LPR spouse/child:
    *   "no te quiere ayudar a arreglar tus papeles" (doesn't want to help arrange your papers).
    *   "no te quiere firmar" (doesn't want to sign).
    *   "está aguantando" (is holding back/withholding their help).
    *   "no te ha pedido porque han tenido problemas en el matrimonio."

*   **Overemphasis on Confidentiality and "No Signature Needed":** While these are features of VAWA for abuse victims, the firm promotes them as
primary benefits without the crucial context of abuse. Phrases like "sin requerir la firma de su pareja," "todo completamente confidencial," and
"sin que su pareja se dé cuenta" are used to imply a general loophole for non-cooperative relationships, not a specific protection for victims.

*   **Downplaying Risks of Denials:** The statement that a denied VAWA case "no les afecta en ninguna forma, simplemente llega una negación y
tiene que empezar de nuevo" significantly minimizes the severe consequences, such as findings of misrepresentation or future immigration bars,
for pursuing an unsubstantiated VAWA claim.

*   **Lack of Explicit Abuse Explanation:** In numerous instances where VAWA is offered as a solution, the videos explicitly list other
requirements (e.g., valid relationship, good moral character, no criminal record) but conspicuously omit any mention of physical, emotional,
psychological, or sexual abuse or extreme cruelty. One isolated mention of "crueldad extrema o abuso físico" is insufficient to offset the
pervasive pattern of omission in other, more broadly targeted advertisements.

This consistent pattern of obscuring the fundamental requirement of abuse strongly suggests an intent to broaden the perceived eligibility for
VAWA-based relief to individuals who do not qualify, thereby generating business through deceptive practices.
```

65.     To insulate prospective clients from accurate legal advice that would have warned them away from Defendants, Defendants claimed in these videos that they had special expertise in these cases and that, when other attorneys say no, they say "yes."

66.     Sales personnel were instructed to avoid the term "VAWA" and instead characterize the procedure as a "360" process, referencing USCIS Form I-360.

67.     "360" refers to USCIS Form I-360, which is used to apply for various forms of immigration relief, including VAWA self-petitions. The terminology obscured the true nature of the application from prospective clients, who could not readily research a generic form number the way they could research the term "VAWA."

68.     Clients were induced to retain Defendants and to enter into fee agreements based on materially incomplete or deceptive information about the legal services they would receive.

C.     *Defendants' intake-to-filing pipeline manufactured abuse narratives without attorney involvement.*

69. After retention, non-attorney intake personnel conducted structured interviews, recorded client statements, and transcribed responses into a centralized system—without providing legal advice or explaining the implications of the information collected.

70. Defendants record the telephone interviews of their clients, including the intake calls used to generate VAWA declarations.

71. The collected information was then transmitted to a separate department of professional writers who drafted declarations designed to meet internal narrative expectations. The writers fabricated, exaggerated to the point of falsity, or dishonestly recharacterized client statements to align with VAWA eligibility criteria.

72. Direct contact or communication between the clients and the writers does not occur.

73. The drafting of the declaration is based solely on the intake questionnaire created by the non-attorney intake department.

74. The collected information was then transmitted to professional "creative writers" who drafted declarations designed to meet internal narrative expectations, including fabricating, exaggerating to the point of falsity or dishonestly recharacterizing client statements to align with VAWA eligibility criteria.

75. Supporting documents were assembled and combined with semi-automated immigration forms generated from a centralized database, enabling high-volume processing with limited individualized review.

76. Attorneys were involved only at a late stage. They did not conduct direct client interviews or verify the accuracy of declarations before submission.

77. The attorneys who appeared on Defendants' USCIS filings failed to meet and/or did not establish any meaningful direct line of communication with the clients to verify the

accuracy of the application, the sworn declaration, or the accompanying evidentiary documents.

78. At the initiation of the case, alongside signing the retainer agreement, clients were instructed to sign a page disclosing that Defendants would copy and paste the client's signature onto other forms and declarations. Clients' signatures were then digitized and applied across multiple documents without meaningful review or informed consent.

79. The final filing package was assembled and submitted to USCIS by non-attorney staff and without meaningful client review.

80. Clients were not provided a copy of the application packet upon its filing and were often unable to obtain copies of their own records thereafter.

81. Defendants actively discouraged clients from obtaining copies of their applications. Defendants provided some clients with blatantly false written warnings that their file was protected from disclosure under attorney-client privilege or the "work-product doctrine."

82. Throughout this process, Defendants maintained strict control over communications. They prevented direct contact between clients and attorneys or internal staff, limiting opportunities for verification or correction of inaccurate information.

83. In many cases, the attorney from Meneses Law never met directly with the client, even after the client specifically requested a meeting.

84. This pipeline enabled Defendants to process a high volume of cases while minimizing transparency, suppressing accountability, and facilitating the submission of unverified or false information to federal authorities.

85. The structure, incentives, and execution of this enterprise demonstrate a system designed for efficiency and profit at the expense of honest advocacy. The unwitting applicants were made the victims.

86. In fact, many online reviews specifically reference the issues with the firm's insistence on pushing VAWA on clients:

 a. Jovita Morales: Accused the firm of false advertising regarding eligibility for legal status through adult children and claimed they apply for VAWA even when clients do not qualify.

 b. Perez Landscapes services: States the firm tried to convince them to file a VAWA application that was "totally different" from what they needed.

 c. Ebi: Warns that the firm files "VAWA claims that are not true or with super weak evidence" just to take money.

 d. Josy Aureoles: Mentions they hired the attorney for a DACA case, but the firm used a VAWA petition (I-360) instead of a marriage-based petition (I-130), which they describe as misleading.

 e. Carmita Triana: Provides a positive mention, stating they applied for a VAWA visa and received their permit and social security card as expected.

 f. Orianna: A detailed review tracking a long process where they eventually discovered their application was under VAWA, leading to concerns about the firm's transparency.

 **D.  *Plaintiff sought a family-based case; Defendants accepted her as a client and charged $14,550.00.***

87. Plaintiff, a citizen of Mexico, is married to a United States citizen.

88. Plaintiff has been in a relationship with her husband since 2017, and has been married since 2024. Plaintiff and her husband have a U.S. citizen daughter who was born in 2020, along with Plaintiff's son from a previous relationship.

89. In or about August 2024, Plaintiff contacted Meneses Law.

90. Plaintiff was not sophisticated in immigration law and did not understand the differences between immigration remedies.

91. Plaintiff trusted Defendants because they held themselves out as immigration attorneys and professionals.

92. Plaintiff contacted Defendants because she wanted to pursue a family-based immigration petition through her United States citizen husband.

93. Plaintiff did not contact Defendants because she believed she was a victim of qualifying domestic violence under VAWA.

94. Plaintiff did not ask Defendants to prepare a VAWA self-petition.

95. Plaintiff did not understand that Defendants intended to file a VAWA case based on allegations that her husband abused her. She only asked for a family petition, and was told that there was a better and faster process that merely required a statement from her about her relationship with her husband.

96. Plaintiff relied on Defendants to determine the lawful and appropriate immigration strategy. She did not know the difference between an I-130 Petition for Alien Relative, and an I-360 application, only that they were applications through which she could adjust her status through her husband.

97. Defendants knew Plaintiff was relying on their expertise, advice, and professional judgment.

98.  On or about August 15, 2024, Plaintiff signed a representation agreement with Meneses Law.

99.  The representation agreement identifies Meneses Law as the law firm and Plaintiff as the client.

100.  The agreement lists the legal service as preparation of I-360, I-765, and I-485 legal arguments and documents, together with submission to USCIS and service of the case until attendance at a USCIS interview, if applicable.

101.  The agreed legal fee was $14,550.00.

102.  Plaintiff made an initial payment of approximately $3,550.00.

103.  The agreement also required monthly payments of approximately $500.00, due on the tenth of each month until payment was complete.

104.  Plaintiff made payments electronically and several of those payments were made while Plaintiff was residing in the state of Virginia.

105.  The representation agreement bears signatures attributed to Plaintiff and Defendant Meneses.

106.  The representation agreement required Plaintiff to cooperate, provide accurate information, and notify the firm if she changed attorneys.

107.  The agreement also stated that if the firm determined Plaintiff made false statements or material misrepresentations, the firm could terminate the relationship.

108.  Defendants did not apply those same duties of truthfulness and accuracy to themselves. Defendants inserted false, exaggerated, or unauthorized claims into filings attributed to Plaintiff.

109.    On or about August 15, 2024, Defendant Meneses also signed a Form G-28 as Plaintiff's attorney or accredited representative.

110.    The Form G-28 identifies Frances Christine Meneses as attorney of record and lists Meneses Law's Houston address.

111.    The Form G-28 indicates representation before USCIS for Forms I-360, I-765, and I-485.

112.    Plaintiff's records therefore show that Defendant Meneses accepted professional responsibility for the immigration matter.

**E.    *Plaintiff received no meaningful attorney advice and gave no informed consent to a VAWA filing.***

113.    Plaintiff never had a meaningful consultation with Defendant Meneses regarding VAWA eligibility, the difference between a family-based petition and a VAWA self-petition, or the legal risks of filing false abuse allegations.

114.    Plaintiff never spoke with Defendant Meneses in any substantive way about the factual content of the declaration submitted in her name.

115.    Plaintiff never spoke with Defendant Robertson about her application.

116.    Plaintiff never spoke with Defendant Robertson about her declaration.

117.    Plaintiff's communications were handled by staff. No attorney from Defendant Meneses Law reviewed the factual allegations with Plaintiff in Spanish, or in any other language, before filing.

118.    Defendants did not explain to Plaintiff that a VAWA self-petition required truthful allegations of battery or extreme cruelty by a qualifying United States citizen or lawful permanent resident spouse.

119. Defendants did not explain to Plaintiff that submitting false statements to USCIS could expose her to denial of benefits, fraud findings, removal consequences, and potential criminal consequences.

120. Defendants did not explain to Plaintiff that she had more viable lawful alternatives, including a family-based petition through her United States citizen husband.

121. Defendants did not obtain informed consent before using Plaintiff's name and signature to pursue a VAWA theory that depended on allegations Plaintiff says were false.

122. Defendants' failure to provide meaningful attorney advice was especially dangerous because Plaintiff was Spanish-speaking, unfamiliar with immigration law, and dependent on Defendants' representations.

   F.    ***The fabricated declaration: a side-by-side comparison of what Plaintiff said and what Defendants filed.***

123. On or about May 12, 2025, Defendant Rachel Victoria Robertson prepared Plaintiff's Form I-360 and signed the preparer certification.

124. The Form I-360 preparer certification states that the preparer prepared the petition at the request of the petitioner and that the petitioner reviewed the completed petition and supporting documents and informed the preparer that the information was complete, true, and correct.

125. Plaintiff disputes that this certification accurately reflects what occurred. Plaintiff did not review and approve the completed petition and supporting documents in a manner sufficient to confirm that all information was complete, true, and correct, and Plaintiff did not inform Defendants that the abuse narrative was true.

126. While Plaintiff and her husband have had a pretty typical marriage with its normal ups and downs, it was definitely nothing like the extreme scenarios described by Defendants' creative writers. Defendants took a couple of mild remarks from Plaintiff and ran with them, in order to build a case that was not based in reality.

127. Defendants included a declaration titled "Declaration of Ana Yeimi Martinez Garcia in Support of I-360 Application" (the "Declaration"). The Declaration states that Plaintiff suffered psychological, emotional, verbal, physical, sexual, and financial abuse during her marriage. The Declaration falsely transformed Plaintiff into a severe domestic-violence victim for purposes of a VAWA filing.

128. The following side-by-side comparisons illustrate the discrepancy between what Plaintiff actually said to Defendants during the recorded intake and what Defendants caused to be submitted to USCIS in Plaintiff's name. Plaintiff incorporates these mismatches into each cause of action below.

   (1)   *Firearms allegations.*

129. Defendants filed:

   a. that Plaintiff's husband discharged firearms in Plaintiff's direction or around her to intimidate or punish her, and that Plaintiff lived in fear of being struck by a bullet.

130. Plaintiff actually said:

   a. that her husband liked firearms and would sometimes fire them into the air, such as during holidays or while drinking, and that this conduct bothered her.

131. Plaintiff did not tell Defendants that her husband tried to kill her, shot at her, or intentionally fired weapons at her or around her to terrorize her, and Plaintiff did not authorize any such allegation.

(2)    *Physical and psychological abuse allegations.*

132. Defendants filed:

a. that Plaintiff lived in chronic, daily physical fear; that Plaintiff was "trembling in fear" and "living in constant terror"; that Plaintiff was "forced to obey like a dog"; and that Plaintiff was subjected to repeated physical attacks.

133. Plaintiff actually said:

a. that, at most, on one isolated occasion, her husband pushed her against a wall as he was attempting to leave during an argument and she sustained a bruise.

134. Plaintiff did not tell Defendants she lived under chronic daily beatings or psychological torture, and Plaintiff did not authorize the inflated narrative of repeated physical abuse.

(3)    *Financial abuse allegations.*

135. Defendants filed:

a. that Plaintiff's husband completely controlled the finances, made Plaintiff a prisoner in her own marriage, forced her to live on a strict weekly allowance, and maliciously declined her cards.

136. Plaintiff actually said:

a. that she voluntarily chose to stay home to raise her children and that her husband provided her with a cash card and deposited money when she needed it.

137. Plaintiff did not tell Defendants she was financially imprisoned or that her husband intentionally and maliciously declined her cards, and Plaintiff did not authorize any such allegation.

(4)    *Sexual abuse and reproductive coercion allegations.*

138. Defendants filed:

   a. that Plaintiff's husband manipulated her for sex, controlled reproductive choices, and forced intimacy without birth control or protection.

139. Plaintiff actually said:

   a. nothing that would support an allegation of sexual abuse or reproductive coercion. These allegations are false.

140. Plaintiff did not make these statements to Defendants.

141. Plaintiff did not authorize their submission to USCIS.

142. Defendants did not accurately translate, explain, or confirm any of the foregoing allegations with Plaintiff before filing.

143. The Declaration is not a faithful translation or transcription of Plaintiff's experience. It is a litigation-style abuse narrative manufactured to satisfy VAWA eligibility criteria.

144. Defendants knew or should have known that the Declaration contained allegations that required careful verification, attorney supervision, and informed client approval. Defendants failed to exercise that care.

**G.    *Defendants used Plaintiff's electronic signature without informed consent.***

145. Defendants caused Plaintiff to sign immigration documents electronically.

146. Plaintiff was instructed to execute several documents sent to her via email after being contacted by Defendants.

147. The person managing the signature phase failed to properly identify, clarify, or interpret the materials.

148. The individual who contacted the Plaintiff by telephone was not a licensed attorney.

149. The electronic signing process was facilitated via a brief telephone call, lasting approximately five to ten minutes, during which Plaintiff was directed through the signature steps by a non-attorney staff member.

150. Plaintiff was not given a meaningful opportunity to read, review, understand, or correct the Declaration before her signature was used.

151. Plaintiff was not told in clear terms that she was signing a sworn declaration containing severe accusations of abuse against her husband.

152. The person who called did not go over each allegation in the sworn declaration with Plaintiff in any language.

153. Plaintiff was not told that the allegations would be submitted to USCIS under penalty of perjury or that the filing could place her at immigration risk if the allegations were false.

154. The Defendants' utilization of the Plaintiff's electronic signature failed to constitute informed consent. Rather, it served as the tool through which the Defendants filed unauthorized or fraudulent statements under the Plaintiff's identity..

155. Defendants further captured Plaintiff's digitized signature and applied it across multiple documents in the filing package without separate review or approval, consistent with the firm-wide signature-reuse practice described above.

**H.**    ***Defendants caused the false Declaration and Form I-360 to be submitted to USCIS.***

156.    On or before May 12, 2025, Defendants caused the transmission of Plaintiff's Form I-360 and supporting Declaration to USCIS via interstate electronic filing systems and/or mail or courier services.

157.    USCIS issued an I-797C Notice of Action dated August 20, 2025 for Plaintiff's Form I-360, confirming that the I-360 filing was submitted and accepted for processing.

158.    The filing of the I-360 placed Plaintiff in immediate and ongoing jeopardy. As the deceptive claims were presented to a federal authority in her name and executed under penalty of perjury, she remains vulnerable to USCIS holding her accountable for fraudulent statements she never knowingly sanctioned.

159.    Furthermore, Plaintiff remains exposed to the risk that any attempt to retract or rectify the submission might provoke additional investigation, a denial of benefits, a formal referral, or other legal enforcement measures.

160.    The actions of the Defendants resulted in damages extending far beyond the mere loss of legal fees. Their conduct inflicted lasting immigration, legal, and financial jeopardy, as well as significant emotional distress.

161.    Plaintiff was attempting to be a responsible and law-abiding wife and mother by seeking help to rectify her status, and instead Defendants' actions have left her in a precarious position that threatens to upend her and her family's lives.

**I.**    ***Defendants concealed Plaintiff's filings and refused to release her file.***

162.    Several months into the representation, the Plaintiff grew suspicious that the process was being handled improperly.

163. Upon conducting her own research into VAWA, she discovered that the application submitted by Defendants bore no resemblance to her actual circumstances.

164. Plaintiff sought independent legal counsel for secondary evaluations; at least one attorney cautioned her that the circumstances indicated potential fraud and emphasized the necessity of reviewing her client file.

165. In approximately March 2026, Plaintiff visited Defendants' office in person to obtain her records, having been previously assured via telephone that they would be available for collection.

166. Upon Plaintiff's arrival, the reception personnel behaved in a discourteous manner and denied her request for the file, instead directing her to a supervisor who was not a licensed attorney.

167. Plaintiff informed Defendants of her desire to cease any additional immigration filings, citing her belief that their procedures were fundamentally flawed. She explicitly stated to Defendants that she did not meet the criteria for VAWA and that the narrative regarding abuse was factually incorrect.

168. Defendants reassured Plaintiff, urging her to trust their handling of the matter and claiming the case remained in good standing. Despite Plaintiff's concerns, Defendants maintained that the filing package had been dispatched and insisted that no further actions or reversals were possible.

169. Defendants declined to provide Plaintiff with her client file, asserting or suggesting that successor counsel was prohibited from intervening in the work they had performed. Furthermore, Defendants intimated that the file's release was contingent upon Plaintiff fulfilling her outstanding payment obligations.

170. On or about March 6, 2026, Plaintiff signed a Release of Confidential Information authorizing Meneses Law to release her entire legal file to Betzold Law, PLC.

171. The release specifically requested all emails, correspondence, USCIS filings, supporting evidence, receipt notices, approval or denial notices, RFEs, factual notes, timelines, intake notes, paralegal notes, internal case summaries, witness statements, governmental records, payment records, promissory notes, payment plans, invoices, receipts, and signed retainer agreements.

172. The release requested production within five business days. The release expressly stated that electronic signatures would have the same force and effect as original wet signatures. The release contained an audit trail showing it was sent, viewed, verified, signed, and finalized by Plaintiff.

173. Additionally, on approximately March 6, 2026, Plaintiff executed a Limited Scope Representation Agreement with Betzold Law, tasked with procuring and evaluating her entire legal file to investigate potential concerns.

174. Betzold Law transmitted Plaintiff's signed authorization to Meneses Law.

175. Defendants declined the request for the case file around March 12, 2026. They justified this refusal by claiming the Plaintiff's digital signature was inadequate and insisted on either a physical wet signature or the submission of a new Form G-28.

176. The position taken by Defendants was entirely pretextual. Despite their refusal to honor Plaintiff's electronically signed authorization, Defendants had consistently utilized electronic and copied signatures for Plaintiff's own immigration filings throughout the representation. This inconsistency demonstrates that their rejection of her digital

signature was at odds with their established practices during the course of the legal services provided.

177. The Defendants' calculated withholding of the legal file was intended to impede, postpone, or prevent an assessment of the VAWA submission. By keeping these records from the Plaintiff and her new attorneys, the Defendants ensured that she remained unaware of the specific documentation submitted to USCIS on her behalf. This deliberate obstruction significantly hindered the Plaintiff's capacity to mitigate the immigration risks and legal repercussions stemming from the Defendants' fraudulent actions.

### J.      *Plaintiff's case is one of dozens: the pattern of fraudulent VAWA filings.*

178. Plaintiff is among a large group of clients whom Defendants steered into VAWA-based cases without justification.

179. The submission of hundreds, and potentially thousands, of VAWA self-petitions to USCIS in the names of other individuals has been orchestrated by the Defendants, even though these filings contain materially false, exaggerated, or unauthorized claims.

180. Defendants implemented a uniform business model for every client, characterized by marketing-focused retention and the strategic concealment of the VAWA legal theory.

181. The operation relied on non-attorney intake staff, the creation of fabricated declarations by writers who had no direct contact with clients, and scripted electronic-signature processes. Following the submission of these filings, the firm utilized tactics to conceal the files from the clients themselves..

182. Defendants utilized professional creative writers to embellish, exaggerate, or simply lie about the underlying facts, creating standardized abuse narratives designed to ensure clients appeared eligible for VAWA relief regardless of the truth.

183. Defendants used digitized signatures, scripted signing procedures, and inadequate translation in these cases to create the appearance of client approval where none existed.

184. Defendants employed similar excuses and delay tactics to refuse file production when other clients or their subsequent legal counsel requested records.

185. Multiple simultaneous bar grievances have been filed against Defendant Meneses regarding a systemic pattern of unlawful file withholding and immigration fraud. These grievances highlight how the firm utilized professional creative writers to embellish, exaggerate, or plainly lie about underlying facts to manufacture abuse narratives, demonstrating that the misconduct was not isolated but a standard part of the firm's operations.

186. Defendants' repeated file-withholding conduct was not merely defensive. It functioned as concealment of the underlying immigration filings and obstruction of efforts to detect and remediate Defendants' fraud.

187. The objectives of the Defendants' actions were uniform: to produce massive legal revenue through a high volume of immigration submissions, to file VAWA applications regardless of their veracity, to hide these documents from clients and subsequent attorneys, and to keep all collected funds while forcing the risk of immigration fraud onto defenseless clients.

188. As of the date of this Complaint, this pattern of conduct persists, with Defendants continuing to utilize these same methodologies.

### K.    *Plaintiff's damages.*

189. As a direct result of Defendants' conduct, Plaintiff has sustained at least the following economic losses: (a) fees already paid to Defendants; (b) contractual payment obligations

claimed by Defendants under the representation agreement; (c) attorney's fees and costs incurred to obtain her client file, investigate the filing, and advise regarding correction or withdrawal; (d) successor-counsel charges; (e) additional reasonably necessary remediation expenses; and (f) the lost value of competent immigration representation and delay costs associated with pursuing lawful relief through the correct pathway.

190. Plaintiff has suffered mental anguish, fear, anxiety, humiliation, distress, and loss of trust in legal professionals. Plaintiff fears denial of immigration benefits, referral to immigration court, removal proceedings, permanent fraud findings, and other immigration consequences based on documents she did not knowingly authorize.

191. Plaintiff has been forced to delay, coordinate, and strategize carefully before withdrawing or correcting the false filing because immediate action could worsen her immigration exposure.

192. Defendants' conduct placed Plaintiff in legal jeopardy while Defendants retained her fees and attempted to hide the file.

## VI.    Causes of Action

### COUNT I — Legal Malpractice / Professional Negligence (Texas)

(against Defendants Meneses Law, PLLC, Frances Christine Meneses and Rachel Robertson)

193. Plaintiff incorporates all preceding paragraphs.

194. Defendants Meneses, Meneses Law and Robertson owed Plaintiff duties arising from the attorney-client relationship.

195. Those duties included the duties to exercise ordinary care, skill, and diligence; to communicate with Plaintiff; to advise Plaintiff of material risks; to conduct a competent factual investigation; to avoid false filings; to supervise non-attorney staff; to preserve Plaintiff's interests; and to comply with applicable professional obligations.

196. Defendants breached those duties by, among other things:

    a. steering Plaintiff into a VAWA case when she sought a family-based petition;

    b. failing to evaluate whether Plaintiff truthfully qualified for VAWA;

    c. failing to explain the VAWA process, eligibility requirements, and risks;

    d. failing to obtain informed consent;

    e. allowing non-lawyer or inadequately supervised staff to conduct critical legal work;

    f. preparing or submitting a Declaration containing false, exaggerated, or unauthorized abuse allegations;

    g. causing Plaintiff's signature to be used without meaningful review or informed approval;

    h. submitting false or unauthorized documents to USCIS;

    i. failing to provide meaningful Spanish-language explanation and translation;

    j. failing to communicate with Plaintiff through a licensed attorney;

    k. Failing to communicate with Plaintiff as required due to the attorney/client relationship;

    l. falsely certifying under penalty of perjury that Plaintiff was informed of and authorized the filing of the I-360 application and declaration containing false statements;

m.  failing to release Plaintiff's client file upon request;

n.  placing Plaintiff at risk of immigration fraud consequences; and

o.  retaining fees for services that were not competently provided.

197.  Defendants' breaches proximately caused Plaintiff's damages, including fees paid, payment obligations incurred, remediation costs, lost immigration opportunity, costs of successor counsel, investigation costs, and other economic damages.

198.  Plaintiff also suffered foreseeable mental anguish and distress arising from Defendants' mishandling of a matter involving immigration status, family unity, removal risk, and possible fraud consequences.

199.  Plaintiff seeks all damages recoverable under Texas law.

### COUNT II — Breach of Fiduciary Duty (Texas)

(against Defendants Meneses Law, PLLC, Frances Christine Meneses and Rachel Robertson)

200.  Plaintiff incorporates all preceding paragraphs. This claim is pleaded as a separate and distinct cause of action from Count I, based on Defendants' disloyalty, self-dealing, and concealment—not on the standard of care.

201.  An attorney-client relationship existed between Plaintiff and Defendants Meneses, Meneses Law and Robertson. That relationship is fiduciary in nature.

202.  Defendants owed Plaintiff fiduciary duties of loyalty, candor, good faith, full disclosure, fair dealing, confidentiality, avoidance of conflicts, and protection of client property.

203.  Defendants breached those fiduciary duties by, among other things:

a.  subordinating Plaintiff's interests to their own revenue objectives by steering Plaintiff into a VAWA filing she did not seek;

b.  using staff-controlled, quota-driven processes to generate a filing-driven fee stream rather than to advance Plaintiff's lawful interests;

c.  withholding from Plaintiff the material facts needed for her informed decisions, including the nature of a VAWA self-petition, the abuse-allegation requirement, the lawful family-based alternative, and the risks of a false filing;

d.  using Plaintiff's name and signature to submit false or unauthorized statements to a federal agency;

e.  concealing from Plaintiff what had been filed in her name and refusing to release the client file upon authorized request; and

f.  asserting pretextual grounds for withholding the file (digital-signature objections, alleged unpaid balance, alleged work-product doctrine) inconsistent with Defendants' own conduct in the representation.

204.  Defendants' breaches were committed in conscious disregard of Plaintiff's interests and were motivated by Defendants' own pecuniary advantage.

205.  Defendants' breaches caused injury to Plaintiff and conferred benefits on Defendants, including fees retained and continued concealment of the wrongdoing.

206.  Plaintiff seeks actual damages, equitable fee forfeiture and disgorgement of all amounts paid to Defendants, restitution, exemplary damages where permitted, attorney's fees and costs, and all other relief available under Texas law for breach of fiduciary duty by an attorney.

### **COUNT III — Common-Law Fraud (Texas)**

(against all Defendants)

207. Plaintiff incorporates all preceding paragraphs. This claim is pleaded with the particularity required by Federal Rule of Civil Procedure 9(b).

208. Plaintiff identifies the following specific misrepresentations as supporting this claim:

   a. Pre-retainer (in or about August 2024): Defendants' sales representatives, by interstate telephone and through video marketing produced and disseminated by Meneses Law's marketing department, represented to Plaintiff that Defendants would obtain lawful immigration status for her through her marriage to a U.S. citizen, while concealing that Defendants intended to file a VAWA self-petition based on abuse allegations. Defendants represented that they had special expertise and would say "yes" when other attorneys said "no." The speakers were Defendants' sales personnel acting under the supervision and authority of Defendant Meneses.

   b. At retention (on or about August 15, 2024): Defendants represented that they would competently and lawfully handle Plaintiff's immigration matter and that the strategy Defendants selected was appropriate for Plaintiff. The retention was effected via electronic transmission of the representation agreement and Form G-28 signed by Defendant Meneses.

   c. At signing (on or about May 2025): Defendants represented over the telephone that the documents Plaintiff was signing were proper, ready for submission, and faithful to Plaintiff's account. Defendants did not disclose that the Declaration contained severe abuse allegations or that the Declaration would be submitted to USCIS under penalty of perjury.

    d. On the I-360 preparer certification (May 12, 2025): Defendant Robertson certified that Plaintiff had reviewed the petition and supporting documents and informed Robertson that the information was complete, true, and correct, when Robertson knew or recklessly disregarded that no such review had occurred.

    e. Post-filing (in or about March 2025): Defendants told Plaintiff her case was fine, that she should trust Defendants, that another attorney could not interfere, and that the file could not be released for various pretextual reasons.

209. Each representation was material. Each representation was false or misleading when made. Defendants knew the representations were false or made them recklessly without knowledge of their truth.

210. Defendants intended for Plaintiff to rely on the representations by retaining Defendants, paying fees, signing documents, permitting submission of filings, continuing the representation, and delaying corrective action.

211. Plaintiff actually and justifiably relied on Defendants' representations and was injured as a result.

212. Plaintiff seeks damages, exemplary damages where permitted, attorney's fees where recoverable, costs, interest, and all other relief available by law.

### COUNT IV — Fraudulent Inducement (Texas)

(against Defendants Meneses Law, PLLC and Frances Christine Meneses)

213. Plaintiff incorporates all preceding paragraphs.

214. Defendants induced Plaintiff to enter the representation agreement and payment plan through pre-retainer marketing and sales representations that materially misrepresented or

omitted facts about the nature, legality, risk, and appropriateness of the services Defendants would provide.

215. Specifically, Defendants represented that they would provide competent immigration legal services and that they would obtain lawful status for Plaintiff through her U.S. citizen husband.

216. Defendants failed to disclose that they intended to pursue a VAWA filing regardless of Plaintiff's actual eligibility or informed consent; that staff rather than the attorney of record would perform critical legal work without meaningful attorney consultation; and that Defendants would prepare or submit severe abuse allegations that Plaintiff did not authorize and that did not accurately reflect her facts.

217. Plaintiff would not have retained Defendants, signed the agreement, paid the $3,550.00 initial fee, undertaken the $500.00 monthly payment obligation, or proceeded with Defendants had she known the truth.

218. Defendants' fraudulent inducement caused Plaintiff to incur the foregoing financial obligations and the resulting damages.

### COUNT V — Fraudulent Nondisclosure (Texas)

(against Defendants Meneses Law, PLLC, Frances Christine Meneses and Rachel Robertson)

219. Plaintiff incorporates all preceding paragraphs.

220. Defendants owed Plaintiff duties to disclose material facts because they were Plaintiff's attorneys, fiduciaries, and immigration-law professionals and because they had partial disclosures and superior knowledge that imposed disclosure obligations.

221. Defendants failed to disclose material facts, including:

   a. that Plaintiff may not have qualified for VAWA based on her actual facts;

b.  that Defendants intended to use a VAWA theory instead of the family-based path Plaintiff sought;

c.  that the Declaration contained severe abuse allegations;

d.  that the Declaration did not accurately reflect Plaintiff's statements;

e.  that the documents would be submitted to USCIS under penalty of perjury;

f.  that false immigration filings could expose Plaintiff to severe federal consequences;

g.  that Plaintiff had a right to obtain and review her file; and

h.  that Defendants had no valid basis to conceal the file from Plaintiff or successor counsel.

222.  Defendants failed to disclose these facts to induce Plaintiff to act or refrain from acting, including to retain Defendants, to pay fees, to sign documents, to allow filing, and to forbear from corrective action.

223.  Plaintiff relied on Defendants' silence and partial disclosures and was injured as a result.

### COUNT VI — Negligent Misrepresentation (Texas) (Pleaded in the Alternative)

(against all Defendants)

224.  Plaintiff incorporates all preceding paragraphs. This count is pleaded in the alternative to Counts III–V and is grounded, to the extent permitted by Texas anti-fracturing doctrine, in business-side misrepresentations and the supply of false information independent of professional legal judgment.

225.  Defendants, in the course of their business and in transactions in which they had a pecuniary interest, supplied false information for Plaintiff's guidance, including factual

representations in marketing videos, sales scripts, signing-call statements, and post-filing communications about Plaintiff's file.

226. Defendants supplied false information regarding Plaintiff's eligibility, the nature of the filing, the contents of the documents, the accuracy of the Declaration, the need for evidence, the safety of the process, and Plaintiff's ability to obtain her file.

227. Defendants failed to exercise reasonable care or competence in obtaining or communicating the information.

228. Plaintiff justifiably relied on the information and suffered pecuniary loss as a result.

**COUNT VII — Negligence (Texas) (Pleaded in the Alternative)**

(against all Defendants)

229. Plaintiff incorporates all preceding paragraphs. This count is pleaded in the alternative to Count I and is based on conduct independent of, and in addition to, the rendering of professional legal services—specifically: non-attorney intake, sales, scripting, signature handling, file-management, and document-transmission conduct performed by non-lawyer personnel.

230. Defendants owed Plaintiff duties of reasonable care to avoid submitting false information in Plaintiff's name, to avoid misusing Plaintiff's signature, to avoid negligent supervision of non-attorney staff, and to avoid creating foreseeable risk of legal and immigration harm.

231. Defendants breached those duties through the conduct alleged above, including the digitized-signature copy-paste practice, the no-attorney-contact intake structure, and the non-attorney drafting and submission of immigration filings.

232. Defendants' breaches proximately caused Plaintiff's damages.

233. Plaintiff seeks all damages recoverable under Texas law.

## COUNT VIII — Gross Negligence (Texas)

(against all Defendants)

234. Plaintiff incorporates all preceding paragraphs.

235. Defendants' conduct involved an extreme degree of risk, considering the probability and magnitude of potential harm to Plaintiff. Immigration filings submitted under penalty of perjury to USCIS can affect lawful status, eligibility for benefits, removal exposure, fraud findings, and criminal exposure.

236. Defendants were actually, subjectively aware of that risk and proceeded with conscious indifference to Plaintiff's rights, safety, and welfare. Defendants' subjective awareness is shown by, among other things:

   a. Defendants' internal policy of avoiding the term "VAWA" in client communications because that term was readily searchable;

   b. Defendants' imposition of daily retention quotas of approximately thirty (30) clients on sales staff, with discipline up to termination for failure;

   c. Defendants' production of more than 1,000 marketing videos that consciously avoided describing the actual filing strategy;

   d. Defendants' written warnings to clients falsely invoking attorney-client privilege and the work-product doctrine to discourage clients from obtaining their own files;

   e. the volume of similar VAWA filings produced by the firm using the same pipeline; and

f. the pattern of bar grievances filed against Defendant Meneses arising from materially similar conduct.

237. Defendants' conduct was grossly negligent. Plaintiff seeks exemplary damages to the extent permitted by law, including under Texas Civil Practice and Remedies Code chapter 41.

## COUNT IX — Breach of Contract (Texas) (Pleaded in the Alternative)

### (against Defendant Meneses Law, PLLC)

238. Plaintiff incorporates all preceding paragraphs. This count is pleaded in the alternative and is grounded in objective contractual obligations distinct from professional judgment.

239. Plaintiff and Meneses Law entered into a valid representation agreement on or about August 15, 2024.

240. Plaintiff performed, substantially performed, or was excused from further performance.

241. Meneses Law breached express and implied terms of the agreement by, among other things, failing to provide the services described in the agreement (preparation of I-360, I-765, and I-485 legal arguments and documents and submission to USCIS) in a manner consistent with the parties' written undertakings; failing to provide truthful submissions; failing to communicate with Plaintiff; failing to protect Plaintiff's interests; and failing to release Plaintiff's file.

242. Meneses Law also breached implied duties of good faith necessary to give effect to the agreement.

243. Plaintiff suffered damages as a result, including amounts paid, amounts demanded, and consequential losses.

**COUNT X — Money Had and Received / Unjust Enrichment (Texas) (Pleaded in the Alternative)**

(against Defendant Meneses Law, PLLC and Defendant Frances Christine Meneses)

244.    Plaintiff incorporates all preceding paragraphs. This count is pleaded in the alternative to Count IX to the extent any contract is held void, voidable, or unenforceable.

245.    Defendants received money from Plaintiff, including the initial $3,550.00 payment and subsequent monthly payments under the representation agreement.

246.    Defendants received and retained that money under circumstances that, in equity and good conscience, make it inequitable for Defendants to keep it.

247.    Defendants did not provide the lawful, competent, and authorized immigration services for which Plaintiff paid. Defendants instead used the money to fund their pursuit of an unauthorized VAWA filing exposing Plaintiff to federal harm.

248.    Defendants should be required to return all fees and payments received from Plaintiff, together with interest and any other equitable relief.

**COUNT XI — Texas Theft Liability Act (TCPRC ch. 134)**

(against all Defendants)

249.    Plaintiff incorporates all preceding paragraphs.

250.    The Texas Theft Liability Act, Texas Civil Practice and Remedies Code chapter 134, provides a civil cause of action to a person who has sustained damages resulting from theft as defined by section 31.03 of the Texas Penal Code, which includes the unlawful appropriation of property by deception.

251.    Defendants unlawfully appropriated Plaintiff's money—including the $3,550.00 initial payment and subsequent payments under the representation agreement—by deception.

Defendants induced Plaintiff to pay through pre-retainer misrepresentations and concealment of the VAWA scheme, intended at the time to deprive Plaintiff of the lawful, competent, and authorized immigration services for which she was paying.

252. Defendants acted with the requisite intent. Defendants knew at the time they accepted Plaintiff's money that they intended to pursue the predetermined VAWA-mill pipeline rather than competent, individualized immigration representation.

253. Plaintiff sustained damages—including the amounts paid, the amounts claimed against her under the agreement, and consequential losses.

254. Plaintiff seeks actual damages, additional statutory damages of up to $1,000.00 per occurrence under Texas Civil Practice and Remedies Code section 134.005(a)(1), court costs, and reasonable and necessary attorney's fees as mandated by section 134.005(b).

### COUNT XII — Civil Conspiracy (Texas)

(against all Defendants)

255. Plaintiff incorporates all preceding paragraphs.

256. Defendants Meneses, Robertson, Alfonso, and Meneses Law, PLLC are two or more persons within the meaning of Texas civil conspiracy doctrine.

257. Defendants had a meeting of the minds on the object and course of action of the scheme described above: namely, the steering of immigrant clients into VAWA self-petitions through deceptive marketing, the manufacture of false abuse narratives by non-attorney staff, the use of digitized signatures without informed consent, the submission of those filings to USCIS, and the concealment of the filings from clients and successor counsel. To the extent necessary, Plaintiff pleads that the individual Defendants acted for their own pecuniary benefit and outside any legitimate legal-service purpose.

258. Defendants committed unlawful, overt acts in furtherance of that course of action, including each of the misrepresentations, omissions, fraudulent filings, signature misuses, and file-withholding acts described above.

259. Plaintiff suffered injury as a proximate result of those overt acts.

260. Each Defendant is jointly and severally liable for the resulting damages.

**COUNT XIII — Knowing Participation in Breach of Fiduciary Duty (Texas)**

(against Defendants Robertson and Alfonso)

261. Plaintiff incorporates all preceding paragraphs.

262. Texas recognizes a cause of action against a person who knowingly participates in another's breach of fiduciary duty.

263. Defendant Meneses owed Plaintiff fiduciary duties as set forth in Count II and breached those duties.

264. Defendant Robertson knowingly participated in those breaches by, among other things, signing the Form I-360 preparer certification representing that Plaintiff had reviewed the petition and supporting documents and informed the preparer that the information was complete, true, and correct, when Robertson knew or recklessly disregarded that no such review had occurred and that the Declaration contained severe abuse allegations the petitioner had not made.

265. Defendant Alfonso knowingly participated in those breaches by, on information and belief, facilitating the execution of the immigration documents through telephone-guided signing and translation procedures while failing to disclose the contents of the Declaration to Plaintiff and similar clients.

266. Defendants Robertson and Alfonso received benefits from their participation, including compensation, fees, or continued employment derived from the volume of fraudulent filings.

267. Plaintiff was injured by Robertson's and Alfonso's knowing participation. Plaintiff seeks actual damages, equitable disgorgement, and exemplary damages where permitted.

### COUNT XIV — Negligent Supervision, Hiring, and Retention (Texas)

(against Defendants Meneses Law, PLLC and Frances Christine Meneses)

268. Plaintiff incorporates all preceding paragraphs. This count is pleaded as conduct independent of professional legal judgment—namely, the firm-management decisions about whom to hire, train, supervise, and retain in non-attorney intake, sales, drafting, signing, translation, and file-handling roles.

269. Defendants Meneses and Meneses Law owed a duty to exercise reasonable care in the hiring, training, supervision, and retention of their non-attorney personnel, particularly those entrusted with intake interviews, declaration drafting, signature procedures, translation, and file management for immigration clients.

270. Defendants breached that duty by hiring, retaining, and continuing to deploy non-attorney personnel in roles requiring legal judgment; by setting daily client-retention quotas with disciplinary consequences that incentivized fraudulent intake; by failing to train staff to verify abuse allegations against the client's actual statements; by failing to supervise the writers who drafted declarations without client contact; and by failing to terminate or correct personnel and processes responsible for the systemic falsity described above.

271. It was foreseeable that personnel selected, trained, supervised, and retained in this manner would cause harm to clients, including Plaintiff.

272. Defendants' breach proximately caused Plaintiff's injury.

273. Plaintiff seeks damages and exemplary damages where permitted.

**COUNT XV — Texas Deceptive Trade Practices–Consumer Protection Act**

(against all Defendants)

274. Plaintiff incorporates all preceding paragraphs.

275. Plaintiff was a "consumer" under the Texas Deceptive Trade Practices–Consumer Protection Act, Texas Business and Commerce Code chapter 17, because she sought and acquired services—immigration legal services—by purchase.

276. Defendants engaged in false, misleading, deceptive, and unconscionable conduct in connection with the sale and provision of those services, including by representing that services had characteristics, uses, benefits, or quality they did not have; by representing that services were of a particular standard, quality, or grade when they were not; by failing to disclose information concerning the services known at the time of the transaction with intent to induce Plaintiff into a transaction she otherwise would not have entered; and by taking advantage of Plaintiff's lack of knowledge, ability, experience, or capacity to a grossly unfair degree.

277. Plaintiff pleads this claim to the extent it is based on misrepresentations, failures to disclose, unconscionable conduct, and conduct not protected by any professional-services exemption under section 17.49(c). The misrepresentations and unconscionable conduct alleged here arose primarily out of marketing, sales, signature handling, and file-management practices that do not involve the rendering of professional legal opinions.

278. Defendants' conduct was a producing cause of Plaintiff's damages.

279. Pre-suit notice. To the extent pre-suit notice under Texas Business and Commerce Code section 17.505 is required and has not yet matured, Plaintiff requests abatement—not dismissal—to allow notice to mature.

280. Plaintiff seeks economic damages, mental anguish damages where permitted, additional damages for knowing or intentional conduct under section 17.50(b)(1), attorney's fees and costs under section 17.50(d), and all other relief available under the DTPA.

### COUNT XVI — Civil RICO: 18 U.S.C. § 1962(c)

(against Defendants Frances Christine Meneses)

281. Plaintiff incorporates all preceding paragraphs.

A.    *RICO "Persons."*

282. Defendant Frances Christine Meneses is a "person" within the meaning of 18 U.S.C. § 1961(3).

B.    *The RICO Enterprise.*

283. Plaintiff alleges, in the alternative:

   a. Enterprise (legal entity): Meneses Law, PLLC is an "enterprise" within the meaning of 18 U.S.C. § 1961(4) because it is a legal entity that engages in, and the activities of which affect, interstate and foreign commerce. The Defendant "persons" are distinct from this enterprise because each is a natural person separate from the legal entity.

   b. Enterprise (association-in-fact): In the alternative, the enterprise is an association-in-fact within the meaning of 18 U.S.C. § 1961(4) consisting of:

      i.    Meneses Law, PLLC;

      ii.   Frances Christine Meneses, Esq.;

iii.    Julio Carlos Meneses, Vice President;

iv.    Rachel Victoria Robertson, Esq;

v.    Todd Henson, Esq.;

vi.    Robert Torrey, Esq.;

vii.    Perpetua Salvatus-Guerrero, Esq.;

viii.    Ana V. Lopez, Esq.;

ix.    Rosekate Ibe, Esq.;

x.    Marco Martinez, Esq.;

xi.    Jessica Rodriguez, Esq.;

xii.    Maribel Rueda, Chief Financial Officer;

xiii.    Pamela Anzaldua, Senior Director of Sales & Communication;

xiv.    Sylvia Alarcon, Operations Director;

xv.    Stephanie Rivas Ortiz, Field Director;

xvi.    Erika Garcia, Sales Manager;

xvii.    Guadalupe Vega, Marketing Manager;

xviii.    Adriana Rodriguez, Customer Service Manager;

xix.    the firm's sales/intake personnel;

xx.    the firm's creative writers;

xxi.    Diana Alfonso, interpreter and the firm's other interpreters/translators and signing personnel.

xxii.    Meneses Enterprises, LLC, as an entity sharing the same address, management, and financial infrastructure as Meneses Law, PLLC, and serving as a vehicle to receive, hold, or conceal enterprise revenue;

    c. This association-in-fact has a common purpose, relationships among those associated with the enterprise, and longevity sufficient to permit those associates to pursue the enterprise's purpose, as set forth in detail in Section V above.

284. The enterprise had a common purpose: to generate revenue by steering immigrant clients into fraudulent VAWA self-petitions, fabricating or exaggerating abuse narratives, submitting those narratives to USCIS, collecting fees, and concealing the filings to prevent detection.

285. The enterprise had relationships and structure, including:

    a. Mrs. Meneses as owner, supervising attorney, and together with Mr. Meneses as joint decision-makers setting policies, quotas, scripts, and signature-handling procedures;

    b. the marketing department producing more than 1,000 client-acquisition videos according to firm-wide messaging directives;

    c. The maintenance of data and internal systems by the IT department, which supported the operations across all organizational divisions;

    d. the sales/intake "licenciadas" department subject to daily retention quotas of thirty clients;

    e. the declaration-writing creative writer's department producing standardized abuse narratives without client contact;

    f. Robertson and the other associate attorneys as preparers signing the USCIS filings;

    g. Alfonso and other translators/signing personnel facilitating execution of documents over the telephone; and

h. the file-management and reception personnel implementing the firm's file-withholding practice.

286. The enterprise functioned as a continuing unit with sufficient longevity to achieve its purpose.

287. The enterprise affected interstate and foreign commerce. Defendants accept clients located in Texas, Virginia, and other states; transmit documents and payments by interstate wire; submit filings to a federal agency; and operate a marketing and recruiting apparatus across multiple online platforms.

C.    *Conduct of the Enterprise.*

288. Defendant Meneses conducted and participated in the conduct of the enterprise's affairs by directing its policies, supervising its personnel, approving or ratifying filings, and exercising decision-making authority over the methods by which client cases were solicited, prepared, and submitted. Meneses set the firm's quota structure, ratified the prohibition on the term "VAWA" in initial client contacts, approved the digitized-signature copy-paste practice, and authorized the file-withholding policy.

D.    *Pattern of Racketeering Activity.*

289. Defendants engaged in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5), comprising multiple acts indictable under each of the following enumerated predicate offenses listed in 18 U.S.C. § 1961(1):

a. 18 U.S.C. § 1341 (mail fraud);

b. 18 U.S.C. § 1343 (wire fraud);

c. 18 U.S.C. § 1546 (fraud and misuse of visas, permits, and other immigration documents).

*Predicate Acts in Plaintiff's Case*

290.    Predicate Act 1 – Wire Fraud (Marketing Misrepresentations). Beginning in or before August 2024 and continuing thereafter, Defendants used interstate wires (TikTok, online video platforms, telephone communications) to disseminate marketing representations to Plaintiff and other prospective clients that Defendants would obtain lawful immigration status without leaving the country, while concealing the VAWA-based filing strategy. These transmissions were in furtherance of the scheme to defraud and were made with intent to deceive.

291.    Predicate Act 2 – Wire Fraud (Retention and Fee Inducement). On or about August 15, 2024, Defendants used interstate wires to transmit and execute the representation agreement with Plaintiff and to obtain payment from Plaintiff through electronic financial systems—while concealing material facts about the planned VAWA filing.

292.    Predicate Act 3 – Wire Fraud (Ongoing Fee Collection). From August 2024 through the present, Defendants used interstate electronic payment systems to collect recurring monthly payments from Plaintiff under false pretenses. Each monthly collection was a separate use of the interstate wires in furtherance of the scheme.

293.    Predicate Act 4 – Wire Fraud (Declaration Drafting and Signature). In or about May 2025, Defendants used interstate wires to transmit drafted documents to Plaintiff for signature, to guide Plaintiff through telephone-based execution, and to obtain her digitized signature on the Declaration without disclosing its contents.

294.    Predicate Act 5 – Wire Fraud, Mail Fraud, and Visa/Document Fraud (USCIS Submission). On or before May 12, 2025, Defendants caused the transmission of Plaintiff's Form I-360 and the false Declaration to USCIS via interstate electronic filing

systems and/or mail or courier services. The submission contained materially false statements and was made for the purpose of advancing the fraudulent scheme. The submission also constituted a violation of 18 U.S.C. § 1546, which makes it a federal offense to knowingly subscribe as true any false statement with respect to a material fact in any application required by the immigration laws or regulations, or to knowingly present an application or document containing such a false statement.

295.   Predicate Act 6 – Visa/Document Fraud (Preparer Certification). On May 12, 2025, Defendant Robertson signed the Form I-360 preparer certification representing that the petitioner had reviewed the petition and supporting documents and informed Robertson that the information was complete, true, and correct, when she knew or recklessly disregarded that no such review had occurred. This certification was a knowing false statement made in an application required by the immigration laws within the meaning of 18 U.S.C. § 1546.

296.   Predicate Act 7 – Wire Fraud (Signature Misuse). On or about August 15, 2024 and again in or about May 2025, Defendants applied a digitized version of Plaintiff's signature to multiple immigration documents without separate informed consent. The signature misuse furthered the scheme to defraud and was accomplished through interstate wires.

297.   Predicate Act 8 – Wire Fraud (File Concealment). On or about March 12, 2026, and continuing thereafter, Defendants transmitted communications via interstate wires refusing to release Plaintiff's client file despite a valid, audit-trailed authorization. These communications were false, misleading, and pretextual, and they constituted acts of concealment designed to prevent detection of prior predicate acts and to prolong the life of the enterprise.

298. Predicate Act 9 – Wire Fraud (Interstate Payment Processing and Fee Extraction). From August 2024 through at least March 2026, Defendants caused Plaintiff to make approximately twelve (12) separate payments for legal fees through interstate electronic payment systems, including payments made after Plaintiff relocated from Texas to Virginia. Each payment was induced by Defendants' ongoing misrepresentations and omissions regarding the nature of the services being provided, including the concealment of the VAWA-based filing strategy and the submission of false statements to USCIS.

299. Each payment constituted a separate use of interstate wires in furtherance of the scheme, as Defendants knowingly accepted and processed funds through electronic financial systems while continuing to misrepresent the legitimacy of the representation and the status of Plaintiff's case. These transactions were integral to the scheme's objective of generating revenue through fraudulent immigration filings and were reasonably foreseeable consequences of Defendants' conduct.

*Predicate Acts Beyond Plaintiff's Case (the Pattern)*

300. On information and belief, between approximately 2022 and the present, Defendants have caused the submission of materially false, exaggerated, or unauthorized VAWA self-petitions to USCIS in the names of hundreds if not thousands of other clients. Each such submission constitutes one or more separate predicate acts of wire fraud (18 U.S.C. § 1343), mail fraud (18 U.S.C. § 1341), and immigration document fraud (18 U.S.C. § 1546).

301. On information and belief, each of those filings was generated through the same multi-stage pipeline (marketing, scripted intake, fabricated declaration, copied digital

signature, USCIS submission) and was processed using the same interstate wires and federal-agency channels.

302. On information and belief, Defendants further committed predicate acts of wire fraud in those cases by digitally copying client signatures onto multiple immigration documents without separate informed consent as part of the same interstate document-transmission and filing process.

303. On information and belief, Defendants further committed predicate acts of wire fraud in obtaining and collecting fees from those other clients through the same retainer-and-payment infrastructure used with Plaintiff.

   a. Upon information and belief, Meneses Enterprises, LLC served as an additional vehicle through which Defendants received, held, or concealed revenue derived from the pattern of racketeering activity, including fees collected from Plaintiff and other similarly situated clients.

304. Plaintiff incorporates these allegations not to assert representative or class claims on behalf of those other clients, but to demonstrate the scope, regularity, and continuity of the racketeering activity through which Plaintiff was directly injured.

   E.     *Relationship and Continuity.*

305. The predicate acts are related. They share common purposes (revenue generation through fraudulent VAWA filings), participants (Meneses, Robertson, Alfonso, and the firm's departments), methods (the multi-stage pipeline), victims (Plaintiff and similarly situated clients), and results (false USCIS submissions, retained fees, exposed clients).

306. The predicate acts demonstrate closed-ended continuity. They span a substantial period of more than two years, during which Defendants repeatedly committed predicate acts in connection with Plaintiff's case and dozens of other client cases.

307. The predicate acts also demonstrate open-ended continuity. They constitute Defendants' regular way of conducting their immigration practice and pose a specific, present, and ongoing threat of continued racketeering activity. Defendants continue to operate using the same methods, the same personnel, and the same multi-stage pipeline as of the filing of this Complaint.

308. Defendants' obstruction of file requests furthered the RICO scheme by concealing predicate acts and delaying discovery of the fraudulent filings.

F.     *Proximate Cause and Injury to Business or Property.*

309. Plaintiff was injured in her business or property by reason of Defendants' violation of 18 U.S.C. § 1962(c).

310. Plaintiff's injuries were directly and proximately caused by specific predicate acts. Predicate Acts 1–3, & 9 directly induced Plaintiff to part with funds. Predicate Acts 4–7 directly resulted in the submission of false documents in Plaintiff's name, exposing her to fee loss, payment obligations, and successor-counsel costs. Predicate Act 8 directly caused Plaintiff to incur additional attorney's fees and delay damages associated with file recovery.

311. Plaintiff's property injuries include, at minimum: (a) the $3,550.00 initial fee paid; (b) subsequent monthly payments paid; (c) ongoing payment obligations claimed by Defendants under the representation agreement; (d) attorney's fees and costs incurred to obtain the client file, investigate the filing, and advise regarding correction or withdrawal;

(e) successor-counsel charges; (f) the costs, risks, and economic consequences associated with Plaintiff's exposure to potential adverse immigration and legal determinations, including but not limited to possible findings of fraud or willful misrepresentation under federal immigration law, the need for ongoing legal consultation and remediation, and the resulting uncertainty that impairs Plaintiff's ability to pursue lawful immigration status, maintain employment authorization, and make informed financial and personal decisions; and (g) the lost value of competent immigration representation.

312. Plaintiff seeks treble damages on her property injury, costs, attorney's fees, and all relief available under 18 U.S.C. § 1964(c).

### COUNT XVII — Civil RICO Conspiracy: 18 U.S.C. § 1962(d)

(against Defendants Frances Christine Meneses, Julio Carlos Meneses, Rachel Victoria Robertson, and Diana Alfonso)

313. Plaintiff incorporates all preceding paragraphs.

314. Defendant Meneses knowingly agreed to conduct or participate in the affairs of the enterprise through the pattern of racketeering activity described above. Meneses is the architect of the firm-wide policies, quotas, scripts, and procedures that constitute the agreement. Defendant Julio Carlos Meneses, as co-manager of Meneses Enterprises, LLC, further facilitated the conspiracy by maintaining an entity that, upon information and belief, served to receive, hold, or conceal proceeds of the racketeering enterprise.

315. Defendant Robertson knowingly agreed to facilitate and further the scheme by preparing and falsely certifying USCIS submissions in the name of Plaintiff and others who had not actually reviewed and approved the contents.

316. Defendant Robertson knowingly agreed to facilitate and further the scheme by preparing and falsely certifying under penalty of perjury that "*petitioner has reviewed this*

*completed petition, including the Petitioner's Declaration and Certification, or Petitioner's or Authorized Signatory's Declaration and Certification, and informed me that all of this information in the form and in the supporting documents is complete, true, and correct.*"

317. Defendant Alfonso knowingly agreed to facilitate and further the scheme by, on information and belief, conducting telephone-based signing sessions and translation procedures that did not disclose the contents of the declarations to Plaintiff and other clients.

318. Defendant Alfonso knowingly agreed to facilitate and further the scheme by falsely certifying that she read every question and instruction of the petition to the Plaintiff.

319. Defendant Alfonso knowingly agreed to facilitate and further the scheme by falsely certifying under penalty of perjury that Plaintiff informed her "*that he or she understands every instruction, question, and answer on the petition, including the Petitioner's Declaration and Certification, or Petitioner's or Authorized Signatory's Declaration and Certification, and has verified the accuracy of every answer.*"

320. Each Defendant knew the essential nature and scope of the scheme and agreed to participate in it.

321. As a result of this agreement, Plaintiff suffered injury to her business or property.

322. Plaintiff seeks treble damages, costs, attorney's fees, and all relief available under 18 U.S.C. § 1964(c).

### VII.   Exemplary Damages

323. Plaintiff incorporates all preceding paragraphs.

324. Defendants' conduct was fraudulent, malicious, grossly negligent, intentional, knowing, and in reckless disregard of Plaintiff's rights, within the meaning of Texas Civil Practice and Remedies Code chapter 41.

325. Plaintiff seeks exemplary damages to the extent permitted by Texas law and any other applicable law, in an amount sufficient to punish and deter the conduct alleged.

## VIII.    Attorney's Fees, Costs, and Interest

326. Plaintiff seeks attorney's fees, costs, expenses, and interest as permitted by contract, statute, equity, the Texas Theft Liability Act, the DTPA, civil RICO, and all other applicable law.

327. Plaintiff also seeks fee forfeiture and disgorgement based on Defendants' breaches of fiduciary duty.

## IX.    Jury Demand

328. Plaintiff demands a trial by jury on all issues so triable.

## X.    Prayer for Relief

Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendants, jointly and severally where applicable, and award:

    a.  actual, economic, and consequential damages;

    b.  mental anguish damages where permitted by law;

    c.  fee disgorgement and fee forfeiture against Defendants Meneses and Meneses Law, PLLC for breach of fiduciary duty;

    d.  restitution of all fees and payments made to Defendants under theories of money had and received and unjust enrichment;

e. actual damages, additional statutory damages, and mandatory attorney's fees under the Texas Theft Liability Act, Texas Civil Practice and Remedies Code section 134.005;

f. DTPA economic and mental anguish damages, additional damages for knowing and intentional conduct, and attorney's fees under Texas Business and Commerce Code section 17.50;

g. treble damages, costs, and attorney's fees under 18 U.S.C. § 1964(c);

h. exemplary damages under Texas Civil Practice and Remedies Code chapter 41;

i. pre-judgment and post-judgment interest at the maximum lawful rate;

j. attorney's fees, costs, and expenses;

k. an order requiring Defendants to produce Plaintiff's complete client file and to refrain from further representations to USCIS or third parties on Plaintiff's behalf;

l. equitable relief necessary to protect Plaintiff's file, records, and immigration interests; and

m. all other relief, at law or in equity, to which Plaintiff is justly entitled.

Respectfully submitted,

**AVANTI LAW GROUP, PLLC**

By: /s/ *Robert Anthony Alvarez, Sr.*

Robert Anthony Alvarez, Sr.
Fed. Bar No. 3961057
Avanti Law Group, PLLC
600 28th St. SW
Wyoming, MI  49509
(616) 257-6807
ralvarez@avantilaw.com

Jonathon A. Muñoz
**Law Nerd LLC**
Fed. Bar No. (Pending admission)
Texas Bar No. 24124571
2112 S. Shary Rd., Ste. 13
Mission, Texas 78572
lawnerdllc@gmail.com

Attorneys for Plaintiff